UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN LAVERY,<br><br>Plaintiff,<br><br>v.<br><br>RESTORATION HARDWARE LONG TERM DISABILITY BENEFITS PLAN and AETNA LIFE INSURANCE COMPANY,<br><br>Defendants. | Civil Action No.: 17-10321 |

MEMORANDUM AND ORDER

**CASPER, J.** August 6, 2018

## I. Introduction

Plaintiff John Lavery ("Lavery") brings claims under the Employee Retirement Income Security Act ("ERISA") against Defendants Restoration Hardware Long Term Disability Benefits Plan ("the Plan") and Aetna Life Insurance Company ("Aetna") (collectively, "the Defendants") over the denial of his claim for disability benefits. D. 1. Lavery and the Defendants each move for summary judgment. D. 43, 46. Lavery also moves to strike a supplemental filing by the Defendants, D. 53, and the Defendants move to file evidence outside of the administrative record, D. 55. For the following reasons, the Court DENIES Lavery's motion to strike, D. 53, ALLOWS the Defendants' motion to file evidence outside the administrative record, D. 55, ALLOWS Lavery's motion for summary judgment, D. 43, and DENIES the Defendants' motion for summary judgment, D. 46.

## II. Factual Background

The facts are drawn from the administrative record, D. 23, and the parties' submissions and are undisputed unless otherwise noted. Restoration Hardware, Inc. ("RH") is the sponsor of the Plan, which is an employee benefit plan governed by ERISA for which RH also serves as the plan administrator. D. 44 ¶¶ 1, 2; D. 45 ¶¶ 1, 2. Aetna is the underwriter and claims administrator for the Plan. D. 44 ¶ 3; D. 45 ¶ 3. Lavery was an employee of RH and a participant in the Plan. D. 44 ¶ 4; D. 45 ¶ 4.

The Plan offers long-term disability ("LTD") benefits to eligible participants. D. 49 ¶ 4; D. 52 ¶ 4. Under the Plan, Aetna has "discretionary authority" to "determine whether and to what extent employees and beneficiaries are entitled to benefits" and "construe any disputed or doubtful terms of this policy." D. 49 ¶ 7; D. 52 ¶ 7. The "Summary of Coverage" for the Plan states that a beneficiary's eligibility date is "the first day of the calendar month following the date you complete a probationary period of 30 days of continuous service for your Employer, but not before the later of the Effective Date of this Plan and the date you enter the Eligible Class." D. 49 ¶ 9; D. 52 ¶ 9. That Summary of Coverage was amended to include this language on June 23, 2014, and purported to become effective as of May 1, 2014. D. 49 ¶ 9; D. 52 ¶ 9. The Plan states that "Long Term Disability Coverage does not cover any disability that starts during the first 12 months" of coverage if it is "caused or contributed to by a 'pre-existing condition.'" AR 78. The Plan further states that "a disease or injury is a pre-existing condition if, during the three months before the date you last became covered: it was diagnosed or treated; or services were received for the disease or injury; or you took drugs or medicines prescribed or recommended by a physician for that condition." . D. 49 ¶ 13; D. 52 ¶ 13; AR 78. The three-month period referenced in the language of the plan is referred to by the parties as the "look back period." See D. 49 ¶ 37; D. 52 ¶ 37.

On April 25, 2014, Lavery had an office visit with his primary care physician, Dr. Anthony Lopez and presented Dr. Lopez with a lesion on his back. D. 44 ¶¶ 13-14; D. 45 ¶¶ 13-14. Dr. Lopez suspected that the lesion might be a basal cell carcinoma and recommended that Lavery consult with a dermatologist. D. 44 ¶¶ 14; D. 45 ¶ 14. On June 10, 2014, Lavery went to Dr. Eileen Deignan, a dermatologist, about the lesion. D. 49 ¶ 18; D. 52 ¶ 18. Dr. Deignan biopsied the lesion and diagnosed Lavery with malignant melanoma on June 19, 2014. D. 49 ¶¶ 19-20; D. 52 ¶¶ 19-20. On September 29, 2014, Lavery ceased working and sought to commence disability leave on September 30, 2014, due to impairments caused by the treatments for his malignant melanoma. D. 49 ¶ 21; D. 52 ¶ 21. Lavery applied for and received short-term disability benefits under RH's Short Term Disability Plan ("STD Plan"), also administered by Aetna. D. 49 ¶ 22; D. 52 ¶ 22. In the context of the request for short-term disability benefits, RH communicated to Aetna that Lavery's date of hire was May 12, 2014 and the effective date for coverage under the STD Plan was June 1, 2014. D. 49 ¶ 29; D. 52 ¶ 29; AR 165.[1]

On January 26, 2015, an LTD claim file was created for Lavery by Aetna. D. 49 ¶ 24; D. 52 ¶ 24. According to a communication from RH to Aetna on January 26, 2015 regarding the LTD file, Lavery's date of employment with RH was May 12, 2014 and the "effective date" for Lavery's participation in the Plan was June 1, 2014. D. 49 ¶¶ 14, 30; D. 52 ¶¶ 14, 30; AR 164. The Disability Benefit Manager ("DBM") assigned to the initial review of Lavery's claim was Therese Leimback ("DBM Leimback"). D. 49 ¶ 36; D. 52 ¶ 36. For the initial review, DBM Leimback applied the effective date from RH's communication to Aetna of June 1, 2014. D. 49 ¶ 37; D. 52 ¶ 37. DBM Leimback thus used a look back period of March 1, 2014 to May 31, 2014, three months prior to

---

[1] Lavery contends that his actual date of employment with RH was earlier than May 12, 2014, and sought to introduce a declaration to support that contention. D. 37-1. The Court denied Lavery's motion to expand the administrative record to include that declaration. D. 40.

3

the effective date, to determine whether Lavery's claim was subject to the pre-existing condition exclusion of the Plan.  D. 49 ¶ 37; D. 52 ¶ 37.  On or about March 26, 2014, Pedro Cortero, an Aetna Clinical Consultant, conducted a "pre-existing assessment" of Lavery's claim.  D. 44 ¶ 18; D. 45 ¶ 18.  Cortero wrote a note in Lavery's LTD file that considered Lavery's April 2014 visit to Dr. Lopez, his primary care physician, and concluded that "[t]here is no evidence of a definitive diagnosis and management rendered for his malignant melanoma during the look back period." D. 44 ¶ 19; D. 45 ¶ 19; AR 805.  Cortero further wrote that Dr. Lopez's April 2014 assessment was that the lesion was "questionable for BCC [basal cell carcinoma]," that the lesion "may [have been] present for the past six months but remained undiagnosed," and that "[d]efinitive diagnosis was therefore confirmed only after a wide local excision and biopsy on 6/30/14 which has confirmed his melanoma and basal cell carcinoma (BCC) was ruled out."  AR 805.  The note explains that "[t]here are three major types of skin cancers which include basal cell carcinoma, squamous cell carcinoma and melanoma."  AR 805.

DBM Leimback, on or about that same day, wrote that she "will recommend approval of claim."  D. 44 ¶ 20; D. 45 ¶20; AR 812.  Lavery's file also contains a subsequent note from Kathy Leonard, another Aetna representative, dated March 29, 2015, recommending a different outcome: a denial of Lavery's claim.  D. 44 ¶ 24-25; D. 45 ¶ 24-25; AR 814-817.  The note from Kathy Leonard states that the DBM, DBM Leimback, "recommends denial due to pre ex[isting] condition" because Lavery was seen for his lesion in April 2014 by Dr. Lopez which Dr. Lopez determined was a possible basal cell carcinoma.  AR 817.  Leonard, in her note, adds the comment that she has "reviewed the claim and agree that [Lavery] was seen/treated during the look back period" and she "agree[d] to deny claim at this time."  AR 817.  The parties agree that Aetna did

4

not receive any new medical information between the initial recommendation to approve Lavery's claim and the subsequent recommendation to deny Lavery's claim. D. 44 ¶ 29; D. 45 ¶ 29.

Aetna sent Lavery a denial letter on or about March 30, 2015, which stated that Lavery had a pre-existing condition due to his April 2014 visit with Dr. Lopez. D. 44 ¶¶ 30-31; D. 45 ¶¶ 30-31. On or about July 22, 2015, Lavery filed an administrative appeal. D. 44 ¶ 35; D. 45 ¶ 35. On or about August 10, 2015, DBM Leimback requested a review by Tyler Thornton, another clinical consult, of the pre-existing condition issue. D. 44 ¶ 36; D. 45 ¶ 36. Thornton concluded that "[t]he documentation supports overturn of the prior pre ex decision." D. 44 ¶ 47; D. 45 ¶ 37; AR 829. Thornton referred to "the clinical review dated 3/25/15 by P. Cortero thoroughly and accurately reviewing the record including" the April 2014 visit with Dr. Lopez. AR 829. Thornton further explained that "[b]asal cell carcinoma is generally a localized lesion and managed with simple excision. It does not generally produce any period of disability and does not warrant additional treatment such as chemotherapy. Malignant melanoma is an entirely different life threatening condition characterized by wide excision and warrant[s] additional treatment such as chemotherapy." AR 829. On August 14, 2015, DBM Leimback added another note stating that she would "rec[ommend] approval and reinstatement." D. 44 ¶ 39; D. 45 ¶ 39.

On September 8, 2015, a note was entered in Lavery's file stating that Lavery's claim would be denied due to the pre-existing condition exclusion. D. 44 ¶ 40; D. 45 ¶ 40; AR 834. The note states that "[n]o benefit is payable for any disability that is caused by or substantially contributed to by a pre-existing condition, or medical or surgical treatment of a pre-existing condition . . . ." AR 835. The note reads that the lesion "substantially contributed to the disabling condition of malignant melanoma. Since the red lesion was examined and services occurred during the look-back period the condition is pre-ex[isting]." AR 835.

5

On September 9, 2015, a note was entered in Lavery's file indicating, for the first time in Aetna's records, that the effective date of Lavery's coverage was not June 1, 2014, but July 1, 2014. D. 44 ¶ 42; D. 45 ¶ 42; AR 838. The apparent rationale for the change is the Summary of Coverage that issued on June 23, 2014, with an effective date of May 1, 2014, which laid out that the eligibility date is "the first day of the calendar month following the date you complete a probationary period of 30 days of continuous service for your Employer . . . ." D. 44 ¶ 45; D. 45 ¶ 45; AR 61. Under the prior Summary of Coverage, there is no mention of a probationary period, but the policy rather states that "[a]ll classes of employees of a Member Employer are eligible," with certain exceptions that Aetna does not argue apply here. D. 44 ¶ 46; D. 45 ¶ 46; AR 36.[2]

On September 11, 2015, Aetna issued its final decision denying Lavery's claim for LTD benefits. D. 44 ¶ 48; D. 45 ¶ 48. The parties agree that Lavery was not provided with a copy of the new Summary of Coverage until September 24, 2015 and that at no time prior to September 11, 2015 did Aetna communicate to Lavery that Aetna considered Lavery's effective date to be July 1, 2014. D. 44 ¶¶ 49-50; D. 45 ¶¶ 49-50. The September 11, 2015 denial letter explained that the effective date for Lavery's benefits was July 1, 2014, and that the look-back period therefore included both the April 2014 visit with Dr. Lopez and the June 2014 visit with Dr. Deignan, both of which served as bases for its final decision to deny Lavery's claim under the pre-existing condition exclusion. D. 49 ¶¶ 49-50; D. 52 ¶¶ 49-50; AR 693-94.

Additionally, Aetna has filed an affidavit by Stephen E. Simpson II, a senior business consultant with Aetna, laying out Aetna's policies and procedures regarding the review of claims.

---

[2] Aetna contends that under the prior Summary of Coverage "Lavery would still have had to satisfy the applicable eligible period, which required him to be employed at [RH] as a full-time employee for a certain period of time before he could be eligible to participate in the LTD plan." Aetna, however, cites to no specific language in the prior Summary of Coverage laying out any probationary period.

D. 47. Aetna also submitted an affidavit by Lori A. Medley, counsel for Aetna and the Plan, regarding discovery on the subject of Aetna's policies and procedures regarding the review of claims. D. 48. These two declarations are the subject of Lavery's motion to strike, D. 53, and the Defendants' motion to file evidence outside the administrative record, D. 55. In the declaration, Simpson attests, among other things, that it is "Aetna's practice and intention to review LTD claims without regard to the manner in which the employee benefit plan is funded," that "Aetna's employees who make decisions regarding the claims of plan participants, including appeals, are paid fixed salaries and bonuses, which are wholly unrelated to the number of claims paid or claims denied," that "Aetna maintains a separate appeal unit for the consideration of denied claims on appeal," that the "claim department and appeal unit are separate business units from the financial underwriters," and that the financial underwriters "do not advise or influence the claim department or appeal unit with respect to whether or not to pay a claim." D. 47 ¶¶ 3, 4, 9, 10, 12. As discussed below, even with the consideration of these two affidavits, Lavery prevails, and, therefore, the Court DENIES the motion to strike.

### III. Standard of Review

In an ERISA benefits dispute case, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." Bard v. Bos. Shipping Ass'n, 471 F.3d 229, 235 (1st Cir. 2006) (citation omitted). "Generally, our review of a benefits determination will be highly deferential when a plan's terms clearly grant its decision makers the discretionary authority to interpret the plan and determine eligibility for benefits." Id. The parties agree that the plan at issue here granted its decision makers such discretionary authority. D. 50 at 12-13; D. 51 at 6-7. Review of the decisions made by the plan's decision

7

makers, therefore, is "under the arbitrariness standard," where "the ordinary question is whether the administrator's action on the record before him was unreasonable." Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 24 (1st Cir. 2003). Where, as here, the plan administrator is responsible for "both adjudicating claims and paying benefits," arbitrariness remains the standard, but the court may "take account" of any inherent conflict of interest. Denmark v. Liberty Life Assurance Co. of Bos., 566 F.3d 1, 7-8 (1st Cir. 2009). "Judges should weigh a conflict as they would weigh any other pertinent factor; that is, when the relevant considerations are in equipoise, any one factor, including a structural conflict, may act as a tiebreaker." Id. at 8. A conflict of interest will carry less relative weight where "the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." Id. (citation omitted).

## IV. Procedural History

On February 27, 2017, Lavery filed his complaint in this matter. D. 1. On November 9, 2017, Lavery filed a motion to enlarge the administrative record. D. 37. On January 31, 2018, the Court denied that motion. D. 40. Lavery subsequently moved for summary judgment, D. 43, and the Defendants then moved for summary judgment, D. 46. Lavery has now also moved to strike supplemental affidavits filed by the Defendants in support of their motion for summary judgment, D. 53, and the Defendants have moved for leave to file evidence outside the administrative record, D. 55.

## V. Discussion

### A. Lavery's Motion to Strike (D. 53) and the Defendants' Motion for Leave to File Evidence Outside of the Administrative Record (D. 55)

The Defendants seek to add to the record before this Court, and Lavery seeks to strike, the

8

aforementioned affidavit of Stephen E. Simpson II regarding Aetna's policies and procedures, D. 47, and a series of communications between the Defendants and Lavery regarding discovery, D. 48, that purport to show that Aetna produced to Lavery certain written policies of Aetna regarding the putative conflict of interest.

There is a "strong presumption that the record on review is limited to the record before the administrator." Liston, 330 F.3d at 24. New evidence may be reviewed by the court where "the decisional process is too informal to provide a record" or for "certain kinds of claims—e.g., proof of corruption— [that] may in their nature or timing take a reviewing court to materials outside the administrative record." Id. In general, "[w]here the challenge is not to the merits of the decision to deny benefits, but to the procedure used to reach the decision, outside evidence may be of relevance." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 520 (1st Cir. 2005).

The decision of whether to allow the parties the opportunity to add materials outside the administrative record rests in the discretion of the Court. Denmark, 566 F.3d at 10. In Denmark, the First Circuit held that "some discovery on the issue of whether a structural conflict has morphed into an actual conflict" may be appropriate, but that "any such discovery must be allowed sparingly and, if allowed at all, must be narrowly tailored so as to leave the substantive record essentially undisturbed." Id. The court then remarked that because "[i]n future cases, plan administrators . . . can be expected as a matter of course to document the procedures used to prevent or mitigate the effect of structural conflicts," such that "[t]hat information will be included in the administrative record," and that therefore the scope of additional "conflict-oriented discovery" beyond the administrative record should be limited "only to the extent that there are gaps in the administrative record," such as if "the plan administrator has failed to detail its procedures." Id.

As discussed below, however, even assuming that the evidence put forth by Aetna on the

9

issue of the structural conflict is considered and suffices to show that the structural conflict has not morphed into an actual conflict, Lavery still prevails. The Court thus DENIES the motion to strike, D. 53, and ALLOWS Aetna's cross-motion for the Court to consider evidence outside the administrative record, D. 55.

### B. Cross-Motions for Summary Judgment (D. 43, D. 46)

The Defendants contend that they are entitled to summary judgment because Aetna's decision to deny Lavery's claim for benefits was reasonable in two independent ways: first, it was reasonable for Aetna to conclude that, even under a look-back period that ran from March 1, 2014 to May 31, 2014, the pre-existing condition exclusion applied to Lavery's claim for benefits; and second, that it was reasonable for Aetna to conclude that the appropriate look back period was April 1, 2014 to June 30, 2014, because the effective date of Lavery's coverage was in fact July 1, 2014. D. 50 at 16-21.

### i. *The March 1, 2014 to May 31, 2014 Look-Back Period*

The Defendants contend that, even using the March 1, 2014 to May 31, 2014 look-back period (which excludes the June 19, 2014 melanoma diagnosis from the period in which it could be considered a pre-existing condition), Aetna's denial of Lavery's claim for LTD benefits was reasonable because Lavery's April 2014 visit with Lavery triggered the pre-existing condition exclusion. The Summary of Coverage states that coverage is excluded for "any disability that . . . is caused or contributed to by a 'pre-existing condition'" and that "[a] disease or injury is a pre-existing condition if, during the three months before the date you last became covered: it was diagnosed or treated; or services were received for the disease or injury; or you took drugs or medicines prescribed or recommended by a physician for that condition." AR 78.

The Defendants contend that the April 2014 visit constituted a "treatment" for the skin lesion that subsequently was diagnosed as malignant melanoma. D. 50 at 10-11. Lavery responds that there was internal conflict within Aetna regarding whether the April 2014 visit could trigger the pre-existing condition exclusion. D. 43 at 7. Specifically, Cortero, an Aetna Clinical Consultant, concluded that the pre-existing condition exclusion was not triggered because no "diagnosis" or "management" of malignant melanoma occurred at the April 2014 visit, but rather found that Dr. Lopez had only identified a possible basal cell carcinoma, which is a different type of skin cancer from malignant melanoma. AR 805. DBM Leimback initially recommended approval of the claim, and then, according to a note by Kathy Leonard, changed her position based on the fact that Lavery was seen by Dr. Lopez for the lesion which Dr. Lopez diagnosed as a possible basal cell carcinoma. AR 817. Leonard's note provides no additional explanation for DBM Leimback's change in position, which is especially notable in light of two facts: first, the parties agree that Aetna did not receive any new medical information in the interim, D. 44 ¶ 29; D. 45 ¶ 29; and second, the recommendation from Cortero that DBM Leimback had initially relied upon had laid out detailed and specific reasons why the presentation of the lesion and the diagnosis of possible basal cell carcinoma at the April 2014 visit with Dr. Lopez did not trigger the pre-existing condition exclusion.

Moreover, in reviewing Lavery's appeal of the denial of his benefits, Tyler Thornton, concluded that Cortero's assessment had "thoroughly and accurately review[ed] the record including" the April 2014 visit with Dr. Lopez. AR 829. Thornton went on to further explain the distinction between a basal cell carcinoma and a malignant melanoma in the system. AR 829. Aetna again reversed position from the detailed explanation of a clinical consultant, in the absence of any new medical information, when a note was written in Lavery's file stating that Lavery's

claim would be denied due to the pre-existing condition exclusion. AR 834. That note provided only the rationale that the pre-existing coverage exclusion extended to disabilities that were "caused by or substantially contributed to by a pre-existing condition," and that the lesion that Lavery presented to Dr. Lopez on April 2014 "was examined" and "substantially contributed to the disabling condition of malignant melanoma." AR 835. That note does not explain why it was reasonable to conclude that the lesion was itself a "disease or injury" such that it could have constituted a pre-existing condition and the note does not explain why the mere presentation of the lesion to Dr. Lopez constituted the receipt of "services" for a "disease or injury." AR 835.

These two unexplained reversals of the recommendation to award benefits, in the absence of new information and in the face of a detailed explanation for the awarding of benefits, weigh towards a finding that the administrator acted unreasonably. See Miller v. Am. Airlines, Inc., 632 F.3d 837, 848 (3d Cir. 2011) (holding that "[a]n administrator's reversal of its decision to award a claimant benefits without receiving any new medical information to support this change in position is an irregularity that counsels towards finding an abuse of discretion"). The April 2014 visit, therefore, is not an adequate ground on which to grant summary judgment to the Defendants, so the Court moves onto considering whether the June 2014 diagnosis – which the parties do not dispute would trigger the pre-existing condition exclusion if it fell within the look-back period – should be considered to have fallen within the look-back period.

 ii. *The April 1, 2014 to June 30, 2014 Look-Back Period*

Lavery contends that the Defendants should be precluded from relying on the terms of the updated Summary of Coverage that would change his eligibility date to July 1, 2014, and therefore would change the look-back period to include the June 2014 diagnosis of malignant melanoma, because he did not receive timely notice of either the updated Summary of Coverage or Aetna's

12

use of that document to deny his claim until September 11, 2015. D. 43 at 13-17. Lavery points to Department of Labor regulations that state that a plan will not "be deemed to provide a claimant with a reasonable opportunity for" the "full and fair review of a claim and adverse benefit determination" required by ERISA unless "the claims procedures . . . [p]rovide that, before the plan can issue an adverse benefit determination on review on a disability benefit claim based on a new or additional rationale, the plan administrator shall provide the claimant, free of charge, with the rationale . . . [so as] to give the claimant a reasonable opportunity to respond prior to" a final decision. 29 C.F.R. § 2560.503-1(h)(4)(ii). The First Circuit has, in the context of an analogous provision, held that "when a plan with material ambiguous terms violates" its responsibility to provide notice of the reason behind its denial and "a claimant's application is prejudiced by these violations through his reliance on a reasonable interpretation that the plan does not ultimately adopt, we will bar the plan from using the claimant's reliance against him." Bard, 471 F.3d at 237. In that case, the First Circuit barred the plan administrator from relying on a rationale that depended on an ambiguous and unarticulated interpretation of the plan terms, such that the claimant produced medical documentation that "ultimately proved quite harmful to his administrative appeal" under the interpretation eventually used by the plan administrator. Id. at 241. The court relied on its "equitable and common law powers to prevent a plan from taking actions, even in good faith, which have the effect of 'sandbagging' claimants." Id. at 244. The First Circuit's equitable response was to remove from consideration that ultimately harmful medical documentation. Id. at 245. The First Circuit ordered the district court to enter judgment for the claimant, reasoning that while "[i]n other circumstances, it might be an appropriate remedy to remand to a plan administrator for reconsideration," "here the remaining evidence compels the conclusion that [the claimant] is entitled to benefits." Id. at 245-46.

Lavery's case is distinct from Bard in two ways: first, Lavery does not contend that the language of the updated Summary of Coverage is ambiguous as to the effective date of his coverage; and second, the putative prejudice suffered by Lavery is not that he submitted medical documentation that was ultimately harmful to his case but rather that Lavery was not given a full and fair opportunity to contest the Defendants' contention that his date of employment at RH was May 12, 2014. The first distinction does not alter the rationale for declining to award summary judgment to the Defendants on a basis that Lavery did not have a full and fair opportunity to contest before the administrator. See Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, 132 (1st Cir. 2004) (barring a plan from relying on a previously unarticulated justification where that justification did not relate to any ambiguity in the plan terms). The second distinction affects whether the appropriate remedy for the Defendants' failure to provide adequate notice to Lavery should result in judgment for the claimant, as occurred in Bard and Glista, or a remand to the administrator to provide Lavery with a full and fair opportunity to contest the appropriate employment date.

At first glance, this case might appear to present the "other circumstances" referenced by the First Circuit in Bard, 471 F.3d at 245, where remand would be appropriate where it is not clear that the claimant would be entitled to benefits if the claimant had been on notice of all relevant information at the appropriate times. A different factor, however, counsels in favor of entering judgment for Lavery rather than remanding. The updated Summary of Coverage was published on June 23, 2014 – after Lavery had been diagnosed with malignant melanoma – with an effective date of May 1, 2014 – even before Lavery began his employment. Even if Lavery had received notice of the updated Summary of Coverage on June 23, 2014, he still would not have been on notice at the time of his appointment with Dr. Deignan, the dermatologist, on June 10, 2014 (or at

the time of his diagnosis on June 19, 2014) that his malignant melanoma would be a pre-existing condition not subject to coverage under the LTD plan. If he had been aware of this fact, he might have altered the timing of his appointment to July 1, 2014 so as to avoid losing coverage.

Although "[i]t is well-established that ERISA does not prevent employers from adopting, modifying or terminating welfare plans at any time and for any reason," Coffin v. Bowater Inc., 501 F.3d 80, 85 (1st Cir. 2007), courts have blocked "attempts to apply plan modifications retroactively to affect benefits that had already become due." Member Servs. Life Ins. Co. v. Am. Nat. Bank & Tr. Co. of Sapulpa, 130 F.3d 950, 955 (10th Cir. 1997). In that case, the Tenth Circuit held that "[b]ecause plan administrators have an obligation imposed by ERISA to operate the plan according to current plan documents, a post hoc amendment clearly cannot alter a plan provision in effect at the time performance under the plan became due." Id. at 957. While Lavery's case is not exactly analogous, because the obligation to pay LTD benefits arose at the time that Lavery became disabled and not at the time that Lavery was diagnosed, and thus performance from Aetna was not yet due on June 23, 2014, Lavery is able to show prejudice due to his reliance on the terms of the Summary of Coverage that were in effect at the time he sought treatment from Dr. Deignan.

Thus, not only did Lavery have no opportunity to litigate his claim below that he had been an employee as of an earlier date, a remand to allow him to make that claim would be unfair. Lavery made the decision to visit Dr. Deignan on June 10, 2014, and at that point in time, he reasonably understood – based on the Summary of Coverage in effect at that time – that any diagnosis he received from Dr. Deignan would not be considered a pre-existing condition subject to exclusion from long-term disability coverage. The record on remand would therefore be shaped by the reasonable decisions that Lavery made in reliance on a Summary of Coverage that was retroactively changed by Defendants, resulting in prejudice to Lavery. See Bard, 471 F.3d at 245

15

(entering judgment in favor of claimant where "bar[ring] the defendant plan from using [the claimant's] earlier medical evidence against him" to "undo the prejudice that resulted from [the claimant's] reliance on his initial reasonable interpretation of the Plan" would "result[] in a conclusion that the [Plan's] denial of benefits was invalid under any standard of review"). The Court thus declines to remand and ALLOWS Lavery's motion for summary judgment, D. 43, and DENIES the Defendants' motion for summary judgment, D. 46.

**VI.    Conclusion**

For the foregoing reasons, the Court DENIES Lavery's motion to strike, D. 53, ALLOWS the Defendants' motion to file evidence outside the administrative record, D. 55, ALLOWS Lavery's motion for summary judgment, D. 43, and DENIES the Defendants' motion for summary judgment, D. 46. Accordingly, judgment shall enter for Lavery, ordering Aetna to allow his claim for LTD benefits. D. 43 at 18.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge